**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No._____

SCENIC TOURS PTY LTD, and
EVERGREEN TOURS,

                    Plaintiffs,

        v.

HAIMARK, LTD., VERT CAPITAL CORP.,
VC2 CAPITAL LLC, WILLIS & CONNELLY, P.C., and
ABC CORPORATIONS 1-100,

                    Defendants.

_____

### COMPLAINT AND DEMAND FOR JURY TRIAL
_____

Plaintiffs Scenic Tours Pty Ltd ("**Scenic**") and Evergreen Tours ("**Evergreen**" and together with Scenic, the "**Plaintiffs**") by and through its undersigned counsel, bring this Complaint against Defendants Haimark, Ltd.("**Haimark**"), Vert Capital Corp. ("**Vert**"), VC2 Capital LLC ("**VC2**") and ABC Corps. 1-100 ("**ABC Corp.**" and collectively with Haimark, Vert and VC2, the "**Company Defendants**") and Willis & Connelly, P.C. ("**W&C**") and allege as follows:

### NATURE OF THE ACTION

1.      This is an action for breach of contract, unjust enrichment, unlawful distributions under the Colorado Business Corporation Act § 7-108-403, successor liability, and declaratory relief.

## THE PARTIES

2.    Scenic is an Australian corporation with its principal place of business at Level 2 11 Brown Street Newcastle NSW 2300 Australia.

3.    Evergreen Tours is an Australian corporation with its principal place of business at Level 2 11 Brown Street Newcastle NSW 2300 Australia.

4.    Upon information and belief, Haimark is a Colorado corporation with its principal place of business at 1536 Cole Boulevard, Suite 333, Lakewood, Colorado 80401.

5.    Upon information and belief, Vert is a Delaware corporation with a principal place of business in Los Angeles, California.

6.    Upon information and belief, VC2 is a limited liability company with a principal place of business in Los Angeles, California.

7.    ABC Corps. 1-100 are presently unknown subsidiaries, affiliates, parents, franchisees, dealers, successors, or predecessors of, or in any other way related to Haimark, Ltd.

8.    Upon information and belief, W&C is a Colorado professional corporation with a principal office in Breckenridge, Colorado.

## JURISDICTION AND VENUE

9.    This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.  The amount in controversy is over $75,000.

10.    This Court has personal jurisdiction over all of the Defendants because they do continual and ongoing business in the State of Colorado.  Haimark is a Colorado corporation. Vert controls or is under common control with VC2.  VC2 purchased Colorado-based Haimark. W&C is a Colorado professional corporation with offices in Colorado.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants transact business in this District and/or are subject to personal jurisdiction in this District. Venue is also proper in this District because Defendants Haimark's and W&C's headquarters are in this District, a substantial portion of the events giving rise to the claims asserted herein occurred in this District and Plaintiffs suffered harm in this District.  Based upon information and belief, VC2 and/or Vert Capital are majority shareholders in Haimark, a Colorado corporation with operations in Colorado.

## FACTUAL BACKGROUND

### Charter Agreements

12.     Scenic is an Australian company that arranges for and provides river cruise tours throughout the world.

13.     Evergreen is an Australian company that arranges for and provides river cruise tours throughout the world.

14.     Plaintiffs are under common control in ownership.

15.     Haimark arranges for river cruises to be performed throughout the world, including Southeast Asia.

16.     Plaintiffs and Haimark entered into a series of charter agreements whereby the Plaintiffs sold river cruises to take place in Vietnam, Cambodia, and Myanmar.  Haimark was to operate the cruises.

17.     Scenic and Haimark entered into a Charter Agreement dated July 31, 2013 whereby a series of cruises would take place through Vietnam and Cambodia on the ship known as the Mekong Navigator (the "**2013 Mekong Agreement**").

3

18.     Scenic and Haimark entered into another Charter Agreement dated July 31, 2013 whereby a series of cruises would take place throughout Myanmar on the ship known as the Irrawaddy Explorer (the "**2013 Irrawaddy Agreement**").

19.     Evergreen and Haimark entered into a Charter Agreement dated November 12, 2014 whereby a series of cruises would take place through Vietnam and Cambodia on the ship known as the Mekong Navigator (the "**2014 Mekong Agreement**" and together with the 2013 Mekong Agreement and 2013 Irrawaddy Agreement, the "**Agreements**").

## Purchase of the Haimark Companies

20.     Based upon information and belief, Haimark and its related companies were purchased by Vert or VC2 in late January 2016.

21.     On or about late January 2016, Vert or VC2 produced press releases announcing the purchase of Haimark and Vert's or VC2's plan to keep the management team in place.

22.     On or about April 15, 2016, Vert or VC2, now in control of Haimark, dismissed all Haimark employees and ceased all Haimark operations.

## Breach of the Charter Agreements

23.     Haimark represented in each of the Agreements that it owned and operated the ships that would be providing cruises under the respective Agreements.

24.     In fact, Haimark did not own the Mekong Navigator or the Irrawaddy Explorer.

25.     Based upon information and belief, the Mekong Navigator is owned by Lotus Cruises, a Vietnam-based company.

26.     Based upon information and belief, the Irrawaddy Explorer is owned by Ayravata Cruises, a Myanmar-based company.

4

27.     Most significantly, Haimark was to arrange for a cruise on May 8, 2016 under the 2013 Mekong Agreement but failed to do so.

## Payments to Haimark, Ltd.

28.     Each Agreement provides for a series of payments, some of which were to be paid directly from the Plaintiffs to Haimark and other payments that were to be paid from Plaintiffs to an escrow account.

29.     The 2013 Mekong Agreement attached as an exhibit an Escrow Agreement among Scenic, Haimark, and W&C (serving as escrow agent) (the "**Escrow Agreement – 2013 Mekong**").

30.     The 2013 Irrawaddy Agreement attached as an exhibit an Escrow Agreement among Scenic, Haimark, and W&C (serving as escrow agent) (the "**Escrow Agreement – 2013 Irrawaddy**" and together with the Escrow Agreement – 2013 Mekong, the "**Escrow Agreements**").

31.     Contrary to the terms of the Agreements, Haimark issued to Scenic multiple invoices that included incorrect routing information, listing Haimark's bank accounts as the payee for payments that were to be made into the escrow account.

32.     As a result of Haimark's improperly notated invoices, Scenic made payments directly to Haimark that were supposed to be made into the escrow account formed under the Escrow Agreements.

33.     Haimark did not remit these mistaken direct payments to the escrow account (the "**Misdirected Payments**").

34.     Based on information and belief, the escrow account has a balance of approximately $34,227.12 (the "**Remaining Escrow Balance**").

35.     The Misdirected Payments (approximately $247,592.65) greatly exceed the Remaining Escrow Balance – the difference between the two being approximately $213,365.53.

36.     The payments into the escrow account were to be released upon completion of the cruise.

37.     Without warning to the Plaintiffs, Haimark ceased operations on or about April 15, 2016.

38.     Plaintiffs paid Haimark the amounts due in accordance with the Agreements.

39.     In addition to the Misdirected Payments, Haimark retained amounts paid by Scenic for future cruises that have yet to take place.

40.     Based upon information and belief, Haimark has ceased all operations.

41.     Since releasing its employees, Haimark employees or representatives have not been in contact with Scenic.

42.     Because Haimark released its employees and ceased operations, Scenic has had to make arrangements with the actual shipowners to provide the cruises that were supposed to be paid for with the funds provided by Plaintiffs to Haimark, including a cruise that departed May 8, 2016 and is governed by the 2013 Mekong Agreement.

43.     Haimark has not returned funds it was paid under the Agreements for cruises that have not taken place.

<u>**COUNT ONE**</u>

**BREACH OF CONTRACT**

44.     Plaintiffs hereby repeat and reallege the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

45.     Haimark and the Plaintiffs entered into the Charter Agreements.

46.    Haimark represented that it owned the ships that were to provide the cruises under the Agreements.

47.    Haimark did not and does not own the ships that were to provide the cruises under the Agreements.

48.    Haimark was to arrange for a cruise on May 8, 2016 under the 2013 Mekong Agreement but failed to do so.

49.    Haimark did not remit the Misdirected Payments to the escrow account.

50.    Plaintiffs have been damaged by Haimark's breach of contract.

## COUNT TWO

### UNJUST ENRICHMENT

51.    Plaintiffs repeat and reallege the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

52.    Upon information and belief, as a result of receiving payments directly from Scenic, Company Defendants have been unjustly enriched by retaining and/or distributing payments made for completed and future cruises.

53.    Plaintiffs have been damaged by Haimark's unjust enrichment, namely paying shipowners for cruises that were supposed to be provided by Haimark and for the amounts paid to and wrongfully retained by Haimark for certain completed and future cruises in excess of $355,015.55.

54.    Company Defendants received a benefit by accepting payments from Plaintiffs and/or distributing those same funds to shareholders without providing services to Plaintiffs.

55.    Company Defendants' retention of these funds without providing the services is unjust.

## COUNT THREE

### UNLAWFUL DISTRIBUTIONS
**(Colorado Business Corporation Act § 7-108-403)**

56.     Plaintiffs repeat and reallege the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

57.     Based upon information and belief, Vert, VC2 or ABC Corporations 1-100 is now the majority shareholder of Haimark.

58.     Based upon information and belief, Vert, VC2 or ABC Corporations 1-100 has caused distributions from Haimark to Haimark's current shareholders.

59.     Based upon information and belief, Haimark's total assets at the time of distribution were less than the sum of its total liabilities.

## COUNT FOUR

### SUCCESSOR LIABILITY

60.     Plaintiffs repeat and reallege the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

61.     Vert, VC2 or ABC Corporations 1-100 expressly or impliedly assumed the liabilities of Haimark.

62.     Based upon information and belief, Vert's, VC2's  or ABC Corporations 1-100's purchase of Haimark was essentially a consolidation of the two companies.

63.     Based upon information and belief, Vert, VC2, or ABC Corporations 1-100, as the new majority shareholder of Haimark, is merely continuing Haimark's business.

## COUNT FIVE

## DECLARATORY RELIEF

64.     Plaintiffs repeat and reallege the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

65.     Rule 57 of the Federal Rules of Civil Procedure enables Plaintiffs to invoke the Court's power to declare the rights, status, and other legal relations of the parties with respect to contractual agreements.

66.     W&C serves as escrow agent and is a party to the Escrow Agreements.

67.     Scenic paid the Misdirected Payments directly to Haimark.

68.     The Misdirected Payments were intended for the escrow account pursuant to the Agreement and the Escrow Agreements.

69.     The Misdirected Payments are for cruises that are not yet complete and Haimark is unable to provide these cruises.

70.     Additionally, Haimark has already breached the 2013 Mekong Agreement by not providing the cruise that departed on May 8, 2016.

71.     Scenic should be able to draw upon the Remaining Escrow Balance as partial compensation for the Misdirected Payments.

72.     W&C may properly disburse the Remaining Escrow Balance as partial compensation for the Misdirected Payments.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for the following relief:

1.      In its first claim for relief, for damages exceeding the sum of $355,015.55 assessed against the Defendants, plus any additional damages Plaintiffs will suffer if Company Defendants continue to breach the Agreements;

2.      In its second claim for relief, for damages exceeding the sum of $355,015.55 assessed against the Company Defendants, plus any additional damages Plaintiffs will suffer if Company Defendants fail to provide restitution for their unjust enrichment; additionally, for the formation of a constructive trust that should be formed for those funds paid directly to Haimark that should have been paid into the escrow account in the amount of $234,092.25, minus any amounts paid from the Remaining Escrow Balance;

3.      In its third claim for relief, for damages exceeding the sum of $355,015.55 assessed against the Defendants, plus any additional damages Plaintiffs will suffer if Company Defendants fail to compensate Plaintiffs for the unlawful distributions;

4.      In its fourth claim for relief, for damages exceeding the sum of $355,015.55 assessed against the Company Defendants, plus any additional damages Plaintiffs will suffer as a result of the liabilities and unjust enrichment received by Company Defendants; and

5.      In its fifth claim for relief, declaratory relief that releases to Scenic all remaining funds in the escrow accounts formed under the Escrow Agreements.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule 38(b), Plaintiffs Scenic Tours Pty Ltd and Evergreen Tours

hereby demand a jury trial on all issues so triable that are raised by this Complaint.


Respectfully submitted,

FAIRFIELD & WOODS, P.C.


By: */s Craig N. Johnson*
Craig N. Johnson, Esq.
Adrian P. Castro, Esq.
Fairfield & Woods, P.C.
1801 California Street, Suite 2600
Denver, CO  80202
Telephone: (303) 894-4425
Facsimile: (303) 830-1033
Email: cjohnson@fwlaw.com;
acastro@fwlaw.com


*Attorney for Plaintiffs Scenic Tours*
*Pty Ltd and Evergreen Tours*

Dated: May 26, 2016