# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01276-NYW

SCENIC TOURS PTY LTD, and
EVERGREEN TOURS,

    Plaintiffs,
v.

HAIMARK, LTD.,
VERT CAPITAL CORP.,
HAIMARK CRUISE LINES, INC,
HAIMARK HOLDINGS, INC.,
ADAM LEVIN,
MICHAEL POPE, and
LIQUIDITY CAPITAL GROUP, LLC,

    Defendants.

## ORDER ADMINISTRATIVELY CLOSING CASE

Magistrate Judge Nina Y. Wang

    This matter comes before the court on Defendants Vert Capital Corp., Adam Levin, Michael Pope, and Liquidity Capital Group, LLC's Motion to Dismiss and Request for Attorney Fees (the "Motion"). [#79, filed January 10, 2017]. The Motion is before the undersigned Magistrate Judge pursuant to the Order of Reference dated July 27, 2016 [#20] and 28 U.S.C. § 636(c). Having carefully reviewed the Motion and associated filings, the case file, and the relevant case law, and considered the comments offered by counsel during the April 11, 2017 Motion Hearing, **IT IS ORDERED** that this matter is **ADMINISTRATIVELY CLOSED**, subject to being re-opened for good cause.

**BACKGROUND**

Plaintiffs Scenic Tours Pty Ltd and Evergreen Tours are Australian corporations that arrange for and provide river cruise tours around the world. Between July 2013 and November 2014, Plaintiffs entered into three Charter Agreements with Defendant Haimark, Ltd. ("Haimark") facilitating a series of river cruises through Vietnam, Cambodia, and Myanmar (the "Agreements"). [#60 at ¶¶ 20-23]. Plaintiffs initiated this civil action on May 26, 2016 against Haimark, Vert Capital, VC2 Capital LLC, Willis & Connelly, P.C., and ABC Corporations 1-100, to assert claims for breach of contract, unjust enrichment, unlawful distributions under the Colorado Business Corporation Act § 7-108-403, successor liability, and declaratory relief arising from their dissatisfaction with Haimark's performance pursuant to the Agreements. *See* [#1]. On November 4, 2016, Plaintiffs amended their Complaint with leave of court, adding Defendants VC2 Funding, LLC, Haimark Cruise Lines, Inc, Haimark Holdings, Inc., Adam Levin, and Michael Pope, Liquidity Capital Group, LLC. *See* [#59, #60].

The Parties

This court draws the following facts from the First Amended Complaint ("FAC") and presumes them to be true for the purpose of this Order. Haimark is a Colorado corporation. [#60 at ¶ 4]. Defendant Vert Capital Corp. ("Vert") is a Delaware corporation with its principal place of business in California. [*Id.* at ¶ 5]. Defendants Haimark Cruise Lines, Inc. ("Haimark Cruise Lines") and Haimark Holdings, Inc. ("Haimark Holdings") are Delaware corporations with principal places of business in California. [*Id.* at ¶¶ 8, 9]. Defendants Adam Levin and Michael Pope are residents of California. [*Id.* at ¶¶ 10, 11]. Defendant Liquidity Capital Group, LLC ("Liquidity") is a limited liability company with a single member who resides in California. [*Id.*

at ¶ 12; #89]. Non-parties VC2 Capital LLC ("VC2") and VC2 Funding, LLC ("VC2 Funding") are limited liability companies with principal places of business in California.[1] [*Id.* at ¶¶ 6-7]. Plaintiffs assert jurisdiction pursuant to 28 U.S.C. § 1332.

Defendant Vert controls or is under common control with VC2, VC2 Funding, Haimark Cruise Lines, and/or Haimark Holdings. [*Id.* at ¶ 14]. VC2, VC2 Funding, Haimark Cruise Lines, and/or Haimark Holdings purchased Haimark. [*Id.*] Defendants Levin and Pope represented these companies in their purchase of Haimark. [*Id.*] The instant Motion was filed by Defendants Vert, Levin, Pope, and Liquidity (collectively, "Consenting Defendants," for the purpose of this Order). The remaining Defendants, Haimark, Haimark Cruise Lines, and Haimark Holdings, have not appeared in this matter.[2]

## Purchase of the Haimark Companies

Plaintiffs allege that Vert, "through its principals, directors, and officers Levin and Pope, approached the former shareholders of Haimark to inject capital into Haimark in exchange for stock in Haimark and its related companies." [#60 at ¶ 24]. Vert, VC2, VC2 Funding, and Haimark Cruise Lines, whom Plaintiffs refer to as the "Haimark Purchasers," purchased Haimark and its related companies in late January 2016 through companies formed for the purpose of the acquisition, namely Haimark Cruise Lines and Haimark Holdings. [*Id.* at ¶ 25]. Plaintiffs allege that the Haimark Purchasers did not thereafter inject capital into Haimark, but rather, Defendant Vert, pursuant to the direction of Defendants Pope and Levin, caused Haimark funds to "be used

---

[1] Plaintiffs served Haimark on June 3, 2016, see [#10], and served Haimark Holdings and Haimark Cruise Lines on November 16, 2016. See [#69, #71]. Plaintiffs also named VC2 and VC2 Funding in their original and amended pleadings but ultimately dismissed both. *See* [#67].

[2] Because these Defendants have not appeared, they have not consented to the court exercising jurisdiction over them pursuant to 28 U.S.C. § 636(c).

to pay fees to Liquidity under the auspice of 'consulting fees,'" resulting from the purchase of Haimark. [*Id.* at ¶¶ 27, 28]. Plaintiffs further allege that Vert, at the direction of its principals Pope and Levin, targeted Haimark as a "distressed company vulnerable to a takeover," with the purpose of draining its liquid assets, including payments that Haimark had received from Plaintiffs. [*Id.* at ¶ 29]. Additionally, Defendants Levin and Pope authorized distributions to Haimark shareholders despite knowledge of Haimark's liabilities, including its obligations to Plaintiffs under the Agreements. [*Id.* at ¶ 33]. On April 15, 2016, the Haimark Purchasers dismissed all of Haimark's employees and shuttered Haimark. [*Id.* at ¶ 34].

<u>Breach of the Agreements</u>

Haimark represented in the Agreements that it owned and operated the two ships that would be used for the river cruises, and it obligated itself to arrange a cruise on May 8, 2016. [#60 at ¶¶ 35, 39]. Haimark did not in fact own those two ships, and it failed to arrange the May 8 river cruise. [*Id.* at ¶¶ 36-39]. Additionally, the Agreements provided for a series of payments whereby Plaintiffs would remit payment to Haimark in some instances and to an escrow account in other instances. [*Id.* at ¶ 40]. Subsequent to entering into the Agreements, Haimark issued multiple invoices that included its routing information rather than the routing information for the escrow account, resulting in Plaintiffs sending payments to Haimark instead of to the escrow account, as intended by the Agreements. [*Id.* at ¶¶ 43, 44]. Haimark kept these funds that should have instead been held in escrow, which total approximately $247,592.65 ("Misdirected Payments"). [*Id.* at ¶¶ 45, 47]. By contrast, the escrow account had a balance of approximately

4

$34,227.12 ("Escrow Balance").³ The Escrow Balance was to be released upon completion of the May 8, 2016 cruise. [*Id.* at ¶ 48]. Haimark stopped operating on April 15, 2016. [*Id.* at ¶ 49]. Plaintiffs consequently arranged for the owners of the ships to provide the cruises for which it had contracted with and paid Haimark. [*Id.* at ¶ 54].

Relevant Procedural History⁴

On November 11, 2016, following the court's order accepting the First Amended Complaint, Plaintiffs filed a suggestion of bankruptcy alerting the court that in October 2016, three of Haimark's creditors had placed it into involuntary bankruptcy in the United States Bankruptcy Court for the District of Colorado ("Chapter 7 bankruptcy"). *See* [#61]. Plaintiffs stated their intention to nonetheless pursue their claims as to "all other Defendants." [*Id.*] Thereafter, Plaintiffs served or procured waivers of service for Pope, Levin, and Vert. *See* [#70, #72, #78].⁵ Plaintiffs assert three claims against these Consenting Defendants: Unjust Enrichment; Unlawful Distribution under Colo. Rev. Stat. § 7-108-403; and Successor Liability. *See* [#60].

On January 10, 2017, the Consenting Defendants filed the instant Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and (6), arguing that the court lacks jurisdiction over Plaintiffs' claims against them because such claims may only be asserted by the Chapter 7

---

³ Former Defendant Willis & Connelly interpleaded the remaining escrow funds into the court registry pursuant to this court's order dated September 19, 2016. [#50].

⁴ The court has recounted the procedural history of this case in previous orders, *see, e.g.,* [#59], and for the purpose of brevity will discuss here only the background that is relevant to the pending Motion.

⁵ The record does not include proof of service for Liquidity, but counsel for Defendants Pope, Levin, and Vert entered their appearance on behalf of Liquidity and have continued to represent Liquidity in this action. *See* [#75, #76].

bankruptcy trustee; the claims as pled do not implicate Consenting Defendants as a matter of law; and they are entitled to attorney fees incurred in filing the Motion. *See* [#79]. Plaintiffs filed a Response on January 31, 2017 [#81], and the Consenting Defendants filed a Reply on February 14, 2017 [#83]. The court held a hearing on the Motion to Dismiss on April 11, 2017, and took the matter under advisement.

## ANALYSIS

With respect to the Rule 12(b)(1) portion of their Motion, the Consenting Defendants argue that Plaintiffs' claims as to them amount to a theory of fraudulent transfer, that is, Plaintiffs are essentially unsecured creditors of Haimark attempting to avoid effect of the transfer of the Misdirected Payments from Haimark to Defendants. *See* [#79 at 5-6]. The Consenting Defendants contend that, as creditors, Plaintiffs are foreclosed from pursuing claims derivative of a fraudulent transfer theory because Haimark is in bankruptcy and the trustee appointed to Haimark has the exclusive right to assert such claims on behalf of all of Haimark's creditors. [*Id.*] Plaintiffs respond that their claims against the Consenting Defendants are distinct from a general avoidance or fraudulent conveyance claim, because the Misdirected Payments "were never property of Haimark," and therefore are not property of Haimark's estate. Plaintiffs contend that the rights to the Misdirected Payments can be separately adjudicated in this action. [#81 at 6].

As discussed above, after filing the FAC, Plaintiffs alerted the court that some of Haimark's creditors had placed it into involuntary bankruptcy. A trustee has been appointed in the bankruptcy, *see* [#61], but that trustee has not appeared before this court. There appears to be no dispute between the Parties that an automatic stay applies to Haimark. Therefore, before this

court may even consider the substantive arguments raised by the pending Motion, it must first consider whether it can proceed in any capacity without running afoul of the Haimark bankruptcy.

**I.     Applicable Law**

   **A.     The Commencement of a Bankruptcy Action**

The commencement of a case under the Bankruptcy Code creates an estate comprised, subject to certain exceptions, of the debtor's property and includes "all legal or equitable interests of the debtor…" 11 U.S.C. § 541(a)(1). This includes all causes of action belonging to the debtor at the commencement of the bankruptcy case. *PM Denver, Inc. v. Porter (In re Porter McLeod)*, 231 B.R. 786, 791 (D. Colo. 1999) (citing *Delgado Oil Co., Inc. v. Torres,* 785 F.2d 857, 860 (10th Cir. 1986)). The property of the estate is then allocated to pay all claims against the debtor pursuant to the Bankruptcy Code's priority scheme. *See* 11 U.S.C. §§ 101(5), 502, 507.

The bankruptcy court appoints a trustee to administer the estate, and to this end the Bankruptcy Code provides the trustee with a wide range of rights and powers. *Id.* at § 544(a). In particular, the trustee may pursue certain types of causes of action on behalf of the debtor estate. These causes of action fall into two broad categories: (1) actions brought by the trustee as successor to the debtor's interests included as property of the estate under 11 U.S.C. § 541, and (2) actions brought under one of the trustee's avoidance powers under 11 U.S.C. § 544. *Sender v. Simon*, 84 F.3d 1299, 1304 (10th Cir. 1996) (citation omitted). Section 544 is divided into two subsections. The first subsection "gives the trustee the power, as of the commencement of the bankruptcy case, to avoid transfers and obligations of the debtor to the same extent as certain

hypothetical ideal creditors." *Id.* (citing 11 U.S.C. § 544(a)). The second subsection permits a trustee to "avoid any transfer of an interest of the debtor…that is voidable under applicable law by a[n] [unsecured] creditor." *Id.* (quoting 11 U.S.C. § 544(b)). *See also Zilkha Energy Co. v. Leighton*, 920 F.2d 1520, 1523 (10th Cir. 1990); *In re Porter McLeod*, 231 B.R. at 792 (D. Colo. 1999).

However, section 544 "does not transform the trustee into a 'super creditor' with the ability to raise causes of action separate from those possessed by the estate…" *In re Greater Southeast Community Hospital Corp.,* 333 B.R. 506, 520 (Bankr. Dist. Col. 2005). Additionally, section 544 does not enable the trustee "to collect money not owed to the estate." *Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 428 (1972). *See also In re M & L Business Mach. Co., Inc* 136 B.R. 271, 275-76 (D. Colo. 1992) (finding that trustee lacked standing to assert claims that "are based upon particular and distinct injuries to [creditors] which must be proven individually for the collection of damages"). The trustee's powers under section 544(b) are predicated on non-bankruptcy law, often state law, applicable to the transaction sought to be avoided.[6] *Sender*, 84 F.3d at 1304.

The filing of a bankruptcy petition triggers an automatic stay, which enjoins any act to collect, assess, or recover a claim against the debtor that arose pre-petition. 11 U.S.C. § 362(a). The automatic stay prevents creditors from taking further action against the debtor except through the bankruptcy court, and it "protects debtors from harassment and also ensures that the

---

[6] State law provides the guidelines for determining whether a cause of action belongs to the debtor and therefore becomes property of the estate. *Sender*, 84 F.3d at 1305 (citations omitted). *See also In re M & L Business Mach. Co., Inc.*, 136 B.R. 271, 277-78 (D. Colo. 1992). As discussed below, this court is primarily concerned at this time with which court should determine whether the Misdirected Payments are property of the bankruptcy estate.

debtor's assets can be distributed in an orderly fashion, thus preserving the interests of the creditors as a group." *Johnson v. Smith (In re Johnson),* 575 F.3d 1079, 1083 (10th Cir. 2009) (citation omitted).[7] *See also Chao v. Hospital Staffing Servs., Inc.,* 270 F.3d 374, 382-83 (6th Cir. 2001) ("The stay helps preserve what remains of the debtor's insolvent estate and…provide a systematic equitable liquidation procedure for all creditors, secured as well as unsecured, thereby preventing a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.") (internal quotation marks and citation omitted).

**B.     Exercise of Jurisdiction by the Bankruptcy Court**

Bankruptcy courts are created by Article I of the Constitution, and thus act only with the authority granted to them by Congress. *See Celotex Corp. v. Edwards,* 514 U.S. 300, 307 (1995). Title 28 U.S.C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." In addition, "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e). Once a bankruptcy proceeding begins in one court, the concurrent jurisdiction of other courts is partially stripped. *Chao*, 270 F.3d at 383 (citing *In re United States Brass Corp.,* 110 F.3d 1261, 1268 (7th Cir. 1997)). However, "[t]he exclusivity of the bankruptcy court's jurisdiction reaches only as far as the automatic stay provisions of 11 U.S.C. § 362." *Chao*, 270 F.3d at 383. For instance, if the automatic stay applies to an action directed at the

---

[7] The automatic stay provides protection by awarding actual damages, including costs and attorney fees, and, in appropriate circumstances, punitive damages, to "an individual injured by any willful violation of [the] stay…" 11 U.S.C. § 362(k)(1).

9

debtor or its property, jurisdiction is exclusive in the bankruptcy court. *Id.* If the automatic stay does not apply, "the bankruptcy court's jurisdiction is concurrent with that of any other court of competent jurisdiction." *Id.* "Whether the stay applies to litigation otherwise within the jurisdiction of a district court or court of appeals is an issue of law within the competence of both the court within which the litigation is pending…and the bankruptcy court." *In re Baldwin– United Corp. Litig.*, 765 F.2d 343, 347 (2d Cir. 1985) (citations omitted). *See also Broadcast Music, Inc. v. Game Operators Corp.*, 107 B.R. 326, 327 (D. Kan. 1989).

Whether an automatic stay has been or may be violated is a "core proceeding," over which bankruptcy courts have exclusive jurisdiction. *See (In re Johnson)*, 575 F.3d at 1083 ("[a] § 362(k)(1) proceeding is a core proceeding because it 'derives directly from the Bankruptcy Code and can be brought only in the context of a bankruptcy case.'") (quoting *MBNA Am. Bank, N.A. v. Hill,* 436 F.3d 104, 109 (2d Cir. 2006)). Core proceedings are defined as "proceedings which have no existence outside of bankruptcy"; and are proceedings in which bankruptcy courts may enter final judgments. *In re Johnson*, 575 F.3d at 1083. The bankruptcy court also has jurisdiction over related proceedings, which are "civil proceedings that, in the absence of a bankruptcy petition, could have been brought in a district court or state court." *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1517–18 (10th Cir. 1990) (citing 28 U.S.C. §§ 157, 1471(b)). Actions that do not depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings. *Id.* (citing *In re Wood,* 825 F.2d 90, 96 (5th Cir. 1987)). "[T]he test for determining whether a civil proceeding is related in bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* at 1518 (citing *Pacor, Inc. v.*

*Higgins,* 743 F.2d 984, 994 (3d Cir. 1984)). In non-core proceedings, the bankruptcy court must submit proposed findings of fact and conclusions of law unless the parties otherwise agree. 28 U.S.C. § 158(c). Bankruptcy courts are not empowered to conduct jury trials, and thus any matter in which there is a right to a jury trial, whether a core or non-core proceeding, is heard in district court. *See Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.),* 911 F.2d 380, 391–92 (10th Cir. 1990). Nevertheless, the bankruptcy court may supervise discovery, conduct pre-trial conferences and rule on pending motions notwithstanding a party's valid jury demand and eventual jury trial in district court. *In re M & L Business Mach. Co., Inc* 159 B.R. 932, 934-35 (D. Colo. 1993) (citations omitted).

## II. Application

Both sides urge this court to proceed with the adjudication of the pending Motion, and, with respect to Plaintiffs, the three claims asserted against the Consenting Defendants. Although not raised by the Parties, the court may not proceed without first considering whether actions by this court violate or could violate the automatic stay. *Chao*, 270 F.3d at 384 ("courts have uniformly held that when a party seeks to…continue proceedings in one court against a debtor or property that is protected by the stay automatically imposed upon the filing of a bankruptcy petition, the non-bankruptcy court properly responds to the filing by determining whether the automatic stay applies to (*i.e.,* stays) the proceedings") (citations omitted). As illustrated below, this court focuses at this stage on the status of the Misdirected Payments vis-à-vis the Chapter 7 bankruptcy estate, and not the substantive merits of the Motion to Dismiss. Because I conclude that any continued prosecution of the claims in this case, including a substantive disposition of the pending Motion, would impact the inventory of the estate and possibly violate the automatic

11

stay, this court instructs the Parties to proceed in the Chapter 7 bankruptcy case until and unless it becomes clear that the Misdirected Payments are not subject to the bankruptcy proceeding. This court will administratively close the case in the interim, pursuant to D.C.COLO.LCivR. 41.2, to be re-opened upon a showing of good cause.

## A. Plaintiffs' Claims Against the Consenting Defendants

Plaintiffs allege that "Vert, through its principals Levin and Pope, targeted Haimark knowing that it was a distressed company vulnerable to a takeover and with the purpose of removing all liquid assets from the company, including payments made by Plaintiffs or those payments made for the benefit of Plaintiffs." [*Id.* at ¶ 29]. Plaintiffs also allege that Liquidity and Vert "have been unjustly enriched by retaining and/or distributing payments made for completed and future cruises." [*Id.* at ¶¶ 64, 65].[8] Plaintiffs contend that they can prosecute claims arising from these allegations *now*, notwithstanding the concurrent bankruptcy action, because the Misdirected Payments are not part of the bankruptcy estate and Plaintiffs seek recovery from the Consenting Defendants, not Haimark.

As a fundamental matter, Plaintiffs' ability to prevail on the claims asserted against the Consenting Defendants is inextricably intertwined with the court's adjudication of the breach of contract claim against Haimark. For instance, unjust enrichment is a "remedy designed to avoid benefit to one to the unfair detriment of another." *West Ridge Group, LLC v. First Trust Co. of Onaga*, 414 F. App'x 112, 120 (10th Cir. 2011) (quoting *Salzman v. Bachrach,* 996 P.2d 1263, 1265 (Colo. 2000) (en banc)). "A party claiming unjust enrichment must prove that: (1) the defendant received a benefit, (2) at the plaintiff's expense, (3) under circumstances that would

---

[8] Plaintiffs also bring the claim against Haimark and Haimark Cruise Lines, but these Defendants are not subject to the Motion to Dismiss.

12

make it unjust for the defendant to retain the benefit without commensurate compensation." *Sterenbuch v. Goss,* 266 P.3d 428, 431 (Colo. App. 2011). Plaintiffs allege that they entered into Agreements with Haimark by which Haimark would arrange for a cruise to embark on May 8, 2016. [#60 at ¶¶ 57, 60]. Haimark accepted advance payment for arranging this cruise, failed to arrange the cruise, and failed to return the advance payment to Plaintiffs. [*Id.* at ¶¶ 60-61]. However, the Consenting Parties are liable for unjust enrichment only if Haimark breached the Agreements. If Haimark did not breach the Agreements, Plaintiffs cannot demonstrate that Defendants have retained (or disbursed) the Misdirected Payments under circumstances that would make their possession or use of the funds unjust. Similarly, Plaintiffs' standing to assert claims for Unlawful Distributions and Successor Liability is inextricably tied to a determination that Haimark breached the Agreements, thereby causing injury to Plaintiffs. *See* [#60 at ¶¶ 69-76]. No one contends that Defendants could assert any defenses that might be available to Haimark for the breach of contract claims, and Haimark is not required to participate in this action at this time due to the automatic stay.

Plaintiffs also argue that the predicate nature of their Unjust Enrichment claim does not prevent the court from proceeding with this matter because the Misdirected Payments are not part of the bankruptcy estate. But whether the Misdirected Payments are properly within the corpus of the bankruptcy estate is a core proceeding that is properly adjudicated by the bankruptcy court. *See In re Gardner*, 913 F.2d at 1518 (holding that determination of whether marital property was part of bankruptcy estate was a core proceeding, but subsequent determination of ownership of marital property as between third parties, i.e. debtor's former spouse and the government, was not a core proceeding). Then, if the Misdirected Payments are

13

part of the bankruptcy estate, the determination of whether the Misdirected Payments belong to Plaintiffs or Defendants is a related proceeding. *See George Love Farming L.C. v. Barnes Banking Corporation (In re George Love Farming, LLC)*, 438 B.R. 354, 5 (Table), 2010 WL 813689 (10th Cir. BAP Mar. 9, 2010) ("Proceedings 'related to' the bankruptcy include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate") (citation omitted)).

Plaintiffs argue that the court could stay a favorable judgment or Haimark could use an adverse judgment as a defense in the Chapter 7 bankruptcy. Neither argument persuades this court that it is appropriate to move forward with this action. For the reasons discussed above, this court cannot imagine an outcome here that would not affect Haimark's rights and liabilities in the Chapter 7 bankruptcy and thus impact "the handling and administration of the bankruptcy estate." *In re Gardner*, 913 F.2d at 1518. And the suggestion that the court could simply adjudicate the rights as between Plaintiffs and the Consenting Defendants and then stay such a judgment ignores the relationship between the claims and essentially invites the court to issue an advisory opinion. If this court determined that it could adjudicate Plaintiffs' claims without violating the automatic stay, the Parties would still "run the risk that the entire action later will be declared void *ab initio*," should the bankruptcy court disagree and conclude that the automatic stay barred the claims. *Chao*, 270 F.3d at 384 ("bankruptcy court and state court both held action in state court not barred by the stay, but the Third Circuit reversed the bankruptcy court and remanded with instructions to enter an order vacating the judgment of the state court under an exception to the *Rooker–Feldman* doctrine") (citing *Raymark Indus. v. Lai,* 973 F.2d 1125,

1132 (3d Cir. 1992)). Until and unless the bankruptcy court finds that the Misdirected Payments are *not* property of the estate, or the bankruptcy court grants relief from the automatic stay as to this action, this court cannot proceed.

B.   **Consenting Defendants' Motion to Dismiss**

The Consenting Defendants contend that this court may dismiss the claims without running afoul of the bankruptcy action because the Misdirected Payments became part of the bankruptcy estate as soon as the funds were co-mingled, and Plaintiffs lack standing to bring any of the claims because the trustee "has the exclusive power to bring those claims."[9] [#79 at 9]. However, to entertain the Consenting Defendants' arguments with respect to subject matter jurisdiction, this court must first determine whether the Misdirected Payments are part of the bankruptcy estate. As stated above, this inquiry constitutes a core proceeding and lies within the exclusive jurisdiction of the bankruptcy court. Moreover, the question of whether the Misdirected Payments belong to the bankruptcy estate is entangled with the propriety of Haimark's conduct, including whether Haimark improperly directed Plaintiffs to route funds to its account rather than the escrow account, what amount should have been directed to escrow, whether Plaintiffs somehow acquiesced to Haimark receiving the Misdirected Payments, and, ultimately, whether Haimark breached the Agreements. So as to avoid issuing an order that would impact the administration of the bankruptcy estate and that may be rendered void, this court concludes that justice and efficiency are better served by directing the Parties to first

---

[9] The Consenting Defendants also argue that all three claims asserted against them by Plaintiffs are not cognizable as a matter of law. [#79 at 9-18]. But a court must have subject matter jurisdiction before it may consider arguments regarding the sufficiency of a pleading. *See Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016) ("[A] federal court can't 'assume' a plaintiff has demonstrated Article III standing in order to proceed to the merits of the underlying claim, regardless of the claim's significance.").

proceed in the Chapter 7 bankruptcy. *See Bass v. PJCOMN Acquisition Corp.*, No. 09–cv–01614–REB–MEH, 2011 WL 5417083 (D. Colo. Nov. 8, 2011). *Cf. In re Centrix Financial, LLC*, No. 09–cv–01542–PAB–CBS, 2011 WL 63505, at *4 (D. Colo. Jan. 7, 2011) (denying motion for withdrawal of the reference to the bankruptcy court and finding defendants' rights "not infringed by the bankruptcy court retaining jurisdiction over this matter for pre-trial proceedings").

During the April 11 Hearing, counsel for Defendants acknowledged that Plaintiffs would be able to pursue the claims implicating the Misdirected Payments if the trustee abandons them or otherwise decides not to assert them. Plaintiffs may also pursue these claims should the bankruptcy court determine that the Misdirected Payments are not property of the estate. *See In re Gardner*, 913 F.2d at 1518 (noting the bankruptcy court lacks related jurisdiction to resolve controversies between third party creditors which do not involve the debtor or his property unless the court cannot complete administrative duties without resolving the controversy). Plaintiffs could also properly assert their claims against Defendants in this court if they obtain a liability judgment for breach of contract against Haimark in the Chapter 7 bankruptcy. *See* 28 U.S.C. § 157(b)(1) ("Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11…and may enter appropriate orders and judgments, subject to review" by the district court or the bankruptcy appellate panel). Accordingly, while this court finds that it may not proceed with the adjudication of Plaintiffs' claims against Defendants at this time, Plaintiffs are not altogether without recourse

nor are they barred from asserting the claims in this forum at a later date if appropriate.[10] If the case is re-opened, the court and the Parties will be in a better position to determine the precise contours and viability of the claims asserted against the Consenting Defendants.

For the foregoing reasons, **IT IS ORDERED** that:

(1)     The Clerk of the Court is **DIRECTED to ADMINISTRATIVELY CLOSE** this action, subject to re-opening for good cause, pursuant to D.C.COLO.LCivR 41.2; and

(2)     Defendants Vert Capital Corp., Adam Levin, Michael Pope, and Liquidity Capital Group, LLC's Motion to Dismiss and Request for Attorney Fees [#79] may be renewed, if appropriate, upon the re-opening of this action.

Dated: May 3, 2017                                    BY THE COURT:

                                                                          s/ Nina Y. Wang
                                                                          Nina Y. Wang
                                                                          United States Magistrate Judge

---

[10] In arriving at this conclusion, I similarly decline to address Plaintiffs' request in the alternative to amend their FAC "to add additional counts against the Non-Haimark Defendants and other defendants, and to add additional parties..." [#81 at 7]. Plaintiffs may file a motion upon re-opening of the case, if appropriate.